2008 ND 133

**Paul Joseph SAMBURSKY, Petitioner and Appellant**

v.

**STATE of North Dakota, Respondent and Appellee.**

**Nos. 20070177, 20070182.**

Supreme Court of North Dakota.

June 26, 2008.

Rebecca Jo Heigaard McGurran, Grand Forks Public Defender Office, Grand Forks, N.D., for petitioner and appellant.

David Thomas Jones (argued), Assistant State's Attorney, and Stephanie A. Weis (on brief), Legal Intern and third-year law student, under the Rule on Limited Practice of Law by Law Students, Grand Forks, N.D., for respondent and appellee.

SANDSTROM, Justice.

[¶ 1] Paul Sambursky appeals from a district court order, which was entered after a remand in *Sambursky v. State*, 2006 ND 223, 723 N.W.2d 524 ("*Sambursky I* "), denying his post-conviction relief application based upon his claim of ineffective assistance of counsel. We affirm, concluding the district court did not err in finding Sambursky failed to meet his burden of proving his trial counsel's representation fell below an objective standard of reasonableness.

I

[¶ 2] Facts relevant to this case are set forth in *Sambursky I*, 2006 ND 223, 723 N.W.2d 524, and we will not reiterate them here except as necessary to explain the resolution of this appeal.

[¶ 3] In 2003, Sambursky was charged with five counts of gross sexual imposition and one count of disorderly conduct, arising from a series of sexual assaults in Grand Forks in 2001 and 2002. Sambursky pled guilty to the charges. After reviewing the plea agreements and a presentence investigation report, the district court rejected Sambursky's first guilty plea. After a second plea agreement was reached, Sambursky again pled guilty to the charges, and the court accepted his plea. In accordance with this plea agreement, the court sentenced Sambursky to 30 years' incarceration with an additional 50 years suspended. Sambursky subsequently moved for reduction of his sentence under N.D.R.Crim.P. 35, which the court denied.

[¶ 4] In 2004, Sambursky filed an application for post-conviction relief, alleging his guilty plea was not entered knowingly and voluntarily and he received ineffective assistance of counsel. The district court summarily denied his application, and Sambursky appealed. In *Sambursky I*, 2006 ND 223, ¶ 11, 723 N.W.2d 524, this Court held that the district court did not err in finding Sambursky's guilty plea was made knowingly and voluntarily. However, because a majority of this Court concluded Sambursky had raised genuine issues of material fact on his claim for ineffective assistance of counsel, we remanded to the district court for an evidentiary hearing on that claim. *Sambursky I*, at ¶ 27.

[¶ 5] After a March 2007 evidentiary hearing, the district court denied Sambursky's application for post-conviction relief. The court concluded Sambursky had not met his burden to establish a claim of ineffective assistance of counsel. The court found that Sambursky's trial counsel had not "actively misinformed" him about the length of time he would serve in the state penitentiary under the plea agreement. The court found the evidence showed that Sambursky's trial counsel "merely failed to inform Sambursky of the 85% service requirement" and that his counsel's performance fell within the range of reasonable professional assistance. The district court held that since Sambursky

had not met his burden with regard to the "performance prong" of establishing this ineffective assistance claim, it was unnecessary for the court to address the second prong, or "prejudice prong," which requires the petitioner to prove the attorney's deficient performance prejudiced him. Sambursky appeals from the order denying his application for post-conviction relief.

[¶ 6] The district court had jurisdiction under N.D. Const. art. VI, § 8, and N.D.C.C. § 29–32.1–03. Sambursky's appeal was timely under N.D.R.App.P. 4(d). This Court has jurisdiction under N.D. Const. art. VI, §§ 2 and 6, and N.D.C.C. § 29–32.1–14.

## II

[¶ 7] Post-conviction relief proceedings are civil in nature and governed by the North Dakota Rules of Civil Procedure. *Flanagan v. State*, 2006 ND 76, ¶ 9, 712 N.W.2d 602. Whether a petitioner received ineffective assistance of counsel is a mixed question of law and fact and is fully reviewable on appeal. *Klose v. State*, 2005 ND 192, ¶ 10, 705 N.W.2d 809. Under N.D.R.Civ.P. 52(a), the district court's findings of fact will not be disturbed on appeal unless clearly erroneous. "A finding of fact is clearly erroneous if it is induced by an erroneous view of the law, if it is not supported by any evidence, or if, although there is some evidence to support the finding, a reviewing court is left with a definite and firm conviction a mistake has been made." *Heckelsmiller v. State*, 2004 ND 191, ¶ 5, 687 N.W.2d 454.

[¶ 8] We have explained the applicant's "heavy burden" required to prevail on a post-conviction claim for ineffective assistance of counsel:

In accord with the test established by the United States Supreme Court in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), a defendant claiming ineffective assistance of counsel has a heavy burden of proving (1) counsel's representation fell below an objective standard of reasonableness, and (2) the defendant was prejudiced by counsel's deficient performance. *DeCoteau [v. State]*, 1998 ND 199, ¶ 6, 586 N.W.2d 156 (citing *Mertz v. State*, 535 N.W.2d 834, 836 (N.D.1995)). "Effectiveness of counsel is measured by an 'objective standard of reasonableness' considering 'prevailing professional norms.'" *Lange v. State*, 522 N.W.2d 179, 181 (N.D.1994) (quoting *Strickland*, 466 U.S. at 688, 104 S.Ct. 2052. The defendant must first overcome the "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Stoppleworth v. State*, 501 N.W.2d 325, 327 (N.D.1993) (quoting *Strickland*, 466 U.S. at 689, 104 S.Ct. 2052. Trial counsel's conduct is presumed to be reasonable and courts consciously attempt to limit the distorting effect of hindsight. *Lange*, 522 N.W.2d at 181.

*Heckelsmiller*, 2004 ND 191, ¶ 3, 687 N.W.2d 454. We use the same *Strickland* test to assess ineffective assistance of counsel claims under the state constitution. *Flanagan*, 2006 ND 76, ¶ 11, 712 N.W.2d 602.

## III

[¶ 9] Sambursky argues the district court erred in finding he did not receive ineffective assistance of counsel when it concluded that he was not actively misinformed about the length of time he would serve in the state penitentiary under the plea agreement.

[¶ 10] In *Sambursky I*, 2006 ND 223, ¶¶ 20–21, 723 N.W.2d 524, a majority of this Court held that Sambursky had raised a genuine issue of fact as to whether trial

counsel's representation fell below an objective standard of reasonableness under the "performance" prong of the *Strickland* analysis. In his post-conviction relief application, Sambursky asserted that his trial attorney told him that he would serve only "8–10 years" of his 30–year sentence and that counsel purported to research the issue and called the parole board to support his position. *Sambursky I,* at ¶ 18. The majority concluded Sambursky raised a material fact issue as to whether Sambursky's trial attorney "actively misinformed him of the length of time he would serve under the plea agreement." *Id.* On the basis of Sambursky's affidavit asserting he asked his trial counsel whether he "had to serve any sort [of] minimum amount of time," the majority decided there were disputed factual issues about whether Sambursky inquired into how much time of his sentence he would actually serve. *Id.* at ¶ 20. The majority concluded Sambursky's affidavit raised material fact issues regarding "whether he was asking about the actual time he would serve under the plea agreement and whether his attorney's advice was objectively deficient when the attorney advised him of the length of time he would actually serve." *Id.* The majority concluded that if Sambursky established his assertions were correct, then his attorney's performance fell below the standard of reasonable assistance when "he actively misinformed his client about the effects of the law." *Id.* at ¶ 21. The majority, taking Sambursky's assertions as true and construing all reasonable inferences in his favor, held that Sambursky had raised material fact issues entitling him to an evidentiary hearing.

[¶ 11] In *State v. Raulston,* 2005 ND 212, ¶ 15, 707 N.W.2d 464, we stated that it was unlikely that a trial counsel's failure to inform the defendant of the 85 percent service requirement under N.D.C.C. § 12.1–32–09.1 would fall outside the wide range of reasonable professional assistance. In *Sambursky I,* 2006 ND 223, ¶ 19, 723 N.W.2d 524, a majority of this Court concluded *Raulston* was not controlling because it did not hold that "providing misinformation is the same as failing to provide information at all." *Raulston* states, however, that a trial counsel's failure to advise the defendant of the 85 percent service requirement does not per se fall below the objective standard of reasonable representation. *Raulston,* 2005 ND 212, ¶ 15, 707 N.W.2d 464. *Raulston* stands for the principle that it is likely not ineffective assistance of counsel to fail to inform a defendant about the 85 percent rule, but our remand in *Sambursky I* focused on whether Sambursky's trial counsel had provided "active misinformation" about the length of sentence.

[¶ 12] Here, the district court, after an evidentiary hearing, found Sambursky had not proven his attorney "actively misinformed" him about the length of time he would serve in the state penitentiary under the plea agreement. In reaching its conclusion, the court made a number of credibility determinations and findings regarding both Sambursky's testimony and his trial counsel's testimony at the evidentiary hearing. "The task of weighing the evidence and judging the credibility of witnesses belongs exclusively to the trier of fact, and we do not reweigh credibility or resolve conflicts in the evidence." *Greywind v. State,* 2004 ND 213, ¶ 22, 689 N.W.2d 390; *see also Patten,* 2008 ND 29, ¶ 11, 745 N.W.2d 626.

[¶ 13] In concluding Sambursky had not met his burden under the *Strickland* "performance" prong, the district court found that Sambursky's trial counsel had merely failed to inform Sambursky of the 85 percent service requirement and that trial counsel's performance, therefore,

fell within the range of reasonable professional assistance.

[¶ 14] The district court found that the parties did not dispute Sambursky was informed during his state penitentiary orientation that the 85 percent service requirement applied to him and that he had to serve approximately 25 years before he would be eligible for parole. The court also found it was undisputed that trial counsel did not advise Sambursky that he would be subject to the 85 percent requirement before his entry into both the first and second plea agreements or before sentencing. The district court found that Sambursky's testimony and his trial counsel's testimony were directly contradictory as to whether trial counsel actually misinformed Sambursky as to the amount of time he would serve in the penitentiary under the plea agreement. The district court stated:

> Sambursky testifies that on three (3) occasions prior to entering into the first plea agreement he specifically asked his attorney about the 85 % rule and his attorney advised him that it did not apply to him and further that his attorney also advised him that after one year he could apply for parole and be released early if he behaved. Whereas [trial counsel] testifies that Sambursky never brought up the 85% rule or sentencing violent offenders until after sentencing, that he never knew about the 85% service requirement until after sentencing, and that he never promised any early release from prison and had specifically advised Sambursky that he had no right to parole or early release. This court, as the fact finder, has to determine credibility of Sambursky and [trial counsel] and in doing so the court may consider other evidence that may either support or contradict the testimony of the parties as well as consistency or

inconsistency of testimony, demeanor of witnesses, and motivation for testimony.

[¶ 15] In its memorandum decision, the district court examined the testimony of both Sambursky and his trial counsel in reaching its conclusion. The court stated Sambursky had testified that his trial counsel misled him because trial counsel told him the 85 percent service requirement did not apply to him when he specifically asked about the 85 percent rule. Sambursky testified that trial counsel also told him that he could apply for parole after one year in the penitentiary regardless of how much time he received. Sambursky testified that before he signed the first plea agreement, another inmate told him about the 85 percent rule and that the very next day he asked his trial counsel about the 85 percent rule. Sambursky testified trial counsel specifically told him the 85 percent rule did not apply to him because he was not considered a violent offender. Sambursky indicated there were two additional times before entering into the first plea agreement that he had asked his trial counsel about the 85 percent rule, and his trial counsel again told him the 85 percent rule did not apply to him. Sambursky testified that after the third time, trial counsel told him he had talked to the parole board and had done some legal research on the issue and again said the 85 percent rule did not apply to him. Sambursky testified that he specifically used the term "85 percent" when discussing this with his trial counsel. The district court found Sambursky's assertions were not credible.

[¶ 16] On the other hand, Sambursky's trial counsel testified that Sambursky never asked him about an 85 percent rule or sentencing of violent offenders until after Sambursky was sentenced. Despite Sambursky's assertion to the contrary, trial counsel testified Sambursky first asked

him about the 85 percent rule a couple of days after sentencing when Sambursky called him from the Grand Forks correctional center and said another inmate had told him about the rule. Trial counsel testified it was this discussion that prompted the filing of the request for a reduction in sentence under N.D.R.Crim.P. 35.

[¶ 17] Trial counsel denied he had ever told Sambursky that he would have to serve less time than what was agreed to in the plea agreements. Trial counsel testified that he had called the parole board midway through his representation of Sambursky to answer a question Sambursky had asked. In its memorandum opinion, the district court stated, "[Trial counsel] testified that Sambursky wanted [him] to find out if there were any rights a convict in North Dakota has to parole . . . any hard and fast rules or rights of a convict as to when he could be considered for parole." Trial counsel testified that the parole board told him there were no rights to parole and this was discretionary with the board. Trial counsel then advised Sambursky of the parole board's answer that a convict had no right to parole. Trial counsel said this was the only discussion he had with Sambursky regarding parole rights. Counsel's testimony contradicts Sambursky's testimony on this issue.

[¶ 18] On appeal, Sambursky asserts the district court erred in finding that because trial counsel testified Sambursky did not specifically ask about the 85 percent rule, there was no active misinformation. Sambursky asserts that even if he had asked his counsel only about his parole eligibility and not the 85 percent rule, trial counsel had an additional obligation "to clarify he understood Sambursky's question" and provide accurate information. However, Sambursky also concedes it is unchallenged that trial counsel informed Sambursky that he was not subject to any

mandatory minimum sentence and that North Dakota had no parolee rights and that both of these statements were factually accurate. Further, hearing testimony established that trial counsel denied ever telling Sambursky he would serve less time than what was agreed to in the plea agreements and that Sambursky understood he could serve up to 30 years under the second plea agreement.

[¶ 19] The district court also weighed trial counsel's testimony that his representation of Sambursky in the plea negotiations and discussions with Sambursky "focused on the maximum sentence of incarceration and trying to limit the number of years of incarceration specified [in] the plea agreement because, without a right to parole, Sambursky could serve the maximum." The district court also found significant that, at the evidentiary hearing, Sambursky testified he understood there was a possibility he could serve 21 years under the first plea agreement and that in discussing the second plea agreement with his trial counsel, Sambursky knew at sentencing they would be arguing for a downward departure from the 30 years provided in the plea agreement. Importantly, Sambursky also testified he was aware he could serve up to 30 years in the penitentiary under the second plea agreement.

[¶ 20] In resolving the contradictory testimony between Sambursky and his trial counsel, the district court examined additional evidence to either support or contradict the testimony of the parties. The district court addressed a February 2004 letter, which Sambursky argued was, in effect, an admission by his trial counsel that he had incorrectly advised him that the 85 percent rule did not apply. In the letter, trial counsel had stated: "I am sorry we [were] wrong about the 85 percent sentencing, but I don't think it would have

made any difference at the time of sentencing." The district court, however, found trial counsel's explanation of the letter at the evidentiary hearing plausible. Trial counsel testified that he was expressing that he was wrong in not knowing about the 85 percent rule and was sorry he did not know about the rule so he could have advised Sambursky about the rule.

[¶ 21] In support of trial counsel's testimony, the district court also looked to the brief trial counsel filed in support of the motion for reduction in sentence under N.D.R.Crim.P. 35. The court pointed out the brief asserted there were four things Sambursky learned during penitentiary orientation that were not known at sentencing, the first of which was the 85 percent sentencing requirement. The court noted the motion and brief were served on Sambursky at the penitentiary and there was no evidence Sambursky objected to or attempted to correct the brief. Further, the court found that Sambursky did not indicate he was misled by his attorney relating to the 85 percent service requirement in a letter from Sambursky that was filed in support of his motion. The court found Sambursky was unable to provide a sufficient explanation for that letter at the evidentiary hearing. The court also found it was significant that Sambursky did not allege his attorney had misled him until his post-conviction relief application, "approximately 11 months after he was informed that the 85% service requirement applies to him."

[¶ 22] The district court also found there was no documentary evidence that the 85 percent rule was discussed between Sambursky and trial counsel before sentencing. The court did, however, discuss documentary evidence supporting trial counsel's assertion that Sambursky did not ask him about the 85 percent service requirement before sentencing and that trial counsel had never promised Sambursky he would be eligible for early release from prison through parole. The court focused on a December 2003 letter from trial counsel to Sambursky, in which trial counsel summarized the focus they were taking at the sentencing hearing. The district court observed that Sambursky had signed an acknowledgment at the bottom of the letter indicating he received and understood the letter. The district court again found significant that this letter did not mention parole, early release, or the 85 percent requirement. During the hearing, trial counsel testified that his letter attempted to address every issue he discussed with Sambursky relating to sentencing. Trial counsel testified the 85 percent rule had not been discussed and was not an issue. Trial counsel testified he could not have discussed the 85 percent rule with Sambursky before sentencing because he did not know about the rule.

[¶ 23] The district court, finding the December 2003 letter supported trial counsel's testimony, stated that "they were focusing on getting the court to depart downward from the years of incarceration called for in the plea agreement in an attempt to minimize the time Sambursky would have to serve and his belief and subsequent advise [sic] to Sambursky that there was no right to parole or early release." The court considered the letter to be a "careful outline" of the issues trial counsel and Sambursky discussed regarding the upcoming sentencing hearing. The court found that if trial counsel and Sambursky had discussed the 85 percent service requirement, it would have been addressed in his letter.

[¶ 24] The district court also specifically found that Sambursky admitted he would try anything to "null and void the plea agreement" so he could go to trial. On the other hand, the court found trial

counsel had freely admitted to not knowing about the 85 percent service requirement and not advising Sambursky about the rule. The court found trial counsel did not appear to be hiding anything and was very open about what had happened. The court found there was nothing for the trial counsel to gain by his testimony, whereas Sambursky by his own admission had nothing to lose, but stood to gain a trial. The district court ultimately found Sambursky's testimony was not credible "when taken in the context of the other evidence presented at the evidentiary hearing and the pleadings filed in the above cases and also taking into consideration the motivation that exists for Sambursky to not be truthful."

[¶ 25] We conclude the district court did not err in finding that Sambursky's trial counsel did not "actively misinform" him about the length of time he would serve in the state penitentiary under the plea agreement and that the evidence demonstrated his trial counsel merely failed to inform Sambursky of the 85 percent service requirement. On the basis of the record and the district court's findings of fact, we are not left with a definite and firm conviction a mistake has been made. We therefore conclude Sambursky failed to carry his heavy burden to establish that his trial counsel's representation fell below an objective standard of reasonableness.

### IV

[¶ 26] The district court order is affirmed.

[¶ 27] GERALD W. VANDE WALLE, C.J., DANIEL J. CROTHERS, MARY MUEHLEN MARING and CAROL RONNING KAPSNER, JJ., concur.